UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: PROFESSIONAL SATELLITE AND COMMUNICATION, LLC,<br><br>                                         Debtor.<br>_____<br>CH. 11 ESTATE OF JONATHAN MITCHELL SHIFF<br><br>                                        Appellant,<br>v.<br>NANCY L. WOLF, Trustee<br><br>                                        Appellee.<br><br>NANCY L. WOLF, Trustee<br><br>                                        Cross-Appellant,<br>v.<br>JONATHAN SHIFF<br><br>                                        Cross-Appellee. | Case Nos.: 3:17-cv-00033-BEN-BLM<br>                3:17-cv-00080-BEN-BLM<br><br>**ORDER AFFIRMING BANKRUPTCY COURT'S ORDER DISALLOWING CLAIM OF JONATHAN SHIFF** |

/ / /

/ / /

1

In this cross-appeal from the U.S. Bankruptcy Court for the Southern District of California (the "Bankruptcy Court"), Appellant Ch. 11 Estate of Jonathan Mitchell Shiff ("Shiff Estate") appeals from the Bankruptcy Court's Order Disallowing Claim of Jonathan Shiff (Claim No. 41). Appellee and Cross-Appellant Nancy L. Wolf ("Wolf"), Trustee of the Professional Satellite and Communication, LLC ("Prosat") Estate (the "Prosat Estate") cross-appeals from the parts of the Bankruptcy Court's Order Disallowing Claim of Jonathan Shiff (Claim. No. 41) that are adverse to her Objection to the Claim of Jonathan Shiff (Claim No. 41). The key dispute concerns the interpretation of a settlement release.

## BACKGROUND

This case has a long and complex procedural history. It concerns two bankruptcy estates, the Prosat Estate and the Shiff Estate, each of which are almost ten years old, and a number of agreements and court orders relating to those two estates.

Prosat was a California limited liability company, wholly owned and controlled by four individuals. One of those individuals was Jonathan Mitchell Shiff. From 1997 to 2007, Prosat was an authorized dealer for DirecTV subscriptions. Prosat contracted Imagitas, Inc. to advertise DirecTV's services. In July 2006, Imagitas sued Prosat for breach of contract for failure to make payments as they became due. Imagitas amended its complaint to include claims for fraudulent transfer against the four Prosat members. On February 26, 2007, Imagitas obtained a Judgment by Stipulation in the case (the "Imagitas Judgment"). (Record on Appeal ("ROA") Tab 1).[1] The judgment holds Prosat, Shiff, and the three other members jointly and severally liable in the principal amount of $2,960,439.00. (*Id.* at p. 9). On October 10, 2007, Imagitas recorded an Abstract of Judgment in San Diego County. (ROA Tab 9 Ex. B).

---

[1] The Court **GRANTS** the Request for Judicial Notice of the Record on Appeal. (ECF No. 12).

On November 19, 2007, Prosat filed a Chapter 7 bankruptcy petition in U.S. Bankruptcy Court for the Southern District of California, commencing the case now on appeal before this Court. *See In re Professional Satellite & Communication, LLC*, No. 07-06613-LA7 (Bankr. S.D. Cal.). Nancy L. Wolf is the assigned Trustee, and the case is assigned to Judge Louise D. Adler. On April 28, 2008, Imagitas filed a Proof of Claim in the Prosat case in the amount of $2,121,411.53 based on the remaining amount of the unsatisfied Imagitas Judgment. (ROA Tab 1). This claim is designated as Claim No. 41.

On June 12, 2008, Shiff filed a Chapter 11 bankruptcy petition in U.S. Bankruptcy Court for the Southern District of California. *See In re Jonathan Mitchell Shiff*, No. 08-05226 (Bankr. S.D. Cal.). The case is assigned to Judge Laura S. Taylor. On October 1, 2008, Imagitas filed a Proof of Claim in the Shiff case in the amount of $2,298,094.00 based on the remaining amount of the unsatisfied Imagitas Judgment. (ROA Tab 9 Ex. D; Tab 43). This claim is designated as Claim No. 50. The difference in the amount of Claims Nos. 41 and 50 is due to accrued interest.

Thereafter, Shiff, as debtor-in-possession of the Shiff Estate, and Wolf, as Trustee of the Prosat Estate, negotiated a settlement of various disputes (the "Settlement Agreement"). (ROA Tabs 10 Ex. E & 44). On July 2, 2009, Judge Adler approved the Settlement Agreement in the Prosat Estate, which the Bankruptcy Court entered on July 6, 2009. (ROA Tab 10 Ex. E). On July 15, 2009, the Bankruptcy Court entered Judge Taylor's order approving the Settlement Agreement in the Shiff Estate.[2]

The Settlement Agreement governs the treatment of Claim No. 41 and Claim No. 50. The Settlement Agreement allowed the following claim:

> To the extent that the Shiff Bankruptcy Estate makes any distribution in payment of the Imagitas/Shiff Bankruptcy Claim [Claim No. 50] which such payment will result in a credit against the allowed amount of the

---

[2] The parties do not provide an accurate record citation to this order, but appear to agree that the Bankruptcy Court entered the order on July 15, 2009. (*See* Appellant's Opening Br. at 5; Appellee's Opening Br. at 6).

3

> Imagitas/Prosat Bankruptcy Claim [Claim No. 41], then the Shiff Bankruptcy Estate will subrogate to the part of the Imagitas/Prosat Bankruptcy Claim [Claim No. 41] so credited and a general, unsecured claim without priority by the Shiff Bankruptcy Estate shall be deemed allowed in the amount of such credit resulting from the reduction of the allowed amount of the Imagitas/Prosat Bankruptcy Claim.

(ROA Tab 10 Ex. B at p. 158). In other words, if the Shiff Estate made a payment on Claim No. 50 that reduced Claim No. 41 to the extent of the payment, the Shiff Estate would acquire a general, unsecured claim in the ProSat Estate in the amount of the reduction to Claim No. 41.

The Settlement Agreement also contained a Release (the "Release"), which stated:

> Except for the rights and claims affirmed and/or created in this Agreement, and in consideration of the rights and claims created herein, the releases and other mutual promises set forth in this Agreement and other valuable consideration receipt of which is hereby acknowledged, *Shiff, on behalf [of] himself and as applicable on behalf of his administrators, executors, estates, heirs, attorneys, agents, predecessors, successors, and/or assigns*, and on behalf of all persons acting by, through, under or in concert with Shiff and/or any of them, as the case may be, *hereby releases, remises and forever discharges the Prosat Bankruptcy Estate*, Wolf, and any and all of her employees, agents, attorneys, successors, and/or assigns *from any and all claims*, debts, liabilities, offsets, demands, obligations, damages, losses, costs, expenses, attorney's fees, actions and/or causes of action *of any character, nature and kind whatsoever, known or unknown, suspected or unsuspected, arising out of, resulting from, related to, or in connection with the Shiff Bankruptcy Case, the Prosat Chapter 7 case*, the Wolf v. Shiff and Madison Adversary Proceeding and/or the Wolf/Shiff Bankruptcy Claim. This release shall not release any of the Shiff claims in the Prosat Chapter 7 case as deemed allowed and/or affirmed in this Agreement nor release any rights created in this Agreement and/or in connection with the Liquidating Trust.

(*Id.* at pp. 163-64 (emphasis added)).

The Settlement Agreement further provided:

> It is understood and agreed that this Settlement Agreement is intended to cover and does cover all claims or possible claims of every nature and kind

> whatsoever, whether known or unknown, suspected, or unsuspected, or hereafter discovered or ascertained, and all right[s] under Section 1542 of the Civil Code of California . . . are hereby expressly waved.

(*Id.* at p. 165).

Judge Adler's Order Approving the Settlement Agreement also specifically stated:

> IT IS FURTHER ORDERED that in accordance with the terms of the Settlement Agreement, all claims of Jonathan Shiff other than those specifically created and deemed allowed under the Settlement Agreement be and are hereby disallowed in their entirety.
>
> . . . .
>
> IT IS FURTHER ORDERED that in accordance with the terms of the Settlement Agreement, the following claims in favor of the Shiff Bankruptcy Estate shall be and hereby are deemed allowed herein:
>
> 1. The potential claims for subrogation pursuant to Bankruptcy Code Section 509 as set forth in the Settlement Agreement to the extent the Shiff Bankruptcy Estate pays claims of Imagitas, Inc. . . . for which the Prosat Bankruptcy Estate is jointly liable with the Shiff Bankruptcy Estate and thereby resulting in a reduction of the amount of such joint liability claim against the Prosat Bankruptcy Estate.

(*Id.* at pp. 128-29).

Separately, in October 2009, Shiff, as debtor-in-possession, Union Bank, and Imagitas entered a Stipulation (the "Stipulation") in the Shiff case. (ROA at p. 1065). Judge Taylor approved the Stipulation on October 26, 2009. (ROA at p. 941). The Stipulation gave Union Bank and Imagitas the exclusive right to direct and control the marketing, sale, or lease of Shiff's real property at 8538 Ruette Monte Carlo, La Jolla, California for 18 months following the effective date of his plan of reorganization. (*Id.* at p. 1067).

///
///
///
///

5

3:17-cv-00033-BEN-BLM
3:17-cv-00080-BEN-BLM

The Stipulation provided how Claim No. 50 would be treated. Imagitas agreed to "(1) be treated as fully secured in the Ruette Monte Carlo property, (2) to accept proceeds of any sale of the premises in full satisfaction of all claims against the Debtor's Estate, (3) waive[] rights against collateral in any other property of the estate, and (4) waive[] any right to claim any deficiency as an unsecured creditor of the estate." (*Id.* at p. 1068).

The Stipulation also acted "as an assignment of the Imagitas claim as against Prosat [Claim No. 41] to the Debtor's Estate." (*Id.*) That is, Imagitas assigned Claim No. 41 to the Shiff Estate. On December 8, 2009, the Shiff Estate filed a Transfer of Claim Other Than For Security in the Prosat Estate to transfer Claim No. 41 to the Shiff Estate. (*Id.* at p. 266). The Bankruptcy Court issued a Notice of Transfer of Claim, stating that if no objections were filed within 21 days, the transferee would be substituted as the original claimant without further order of the court. (*Id.* at p. 43). No objections were filed.

The Shiff Estate incorporated the terms of the Settlement Agreement and the Stipulation into Shiff's Sixth Amended Plan of Reorganization Dated November 30, 2009. Judge Taylor approved the Sixth Amended Plan on December 18, 2009, and the Bankruptcy Court entered its Order Confirming Debtor's Sixth Amended Plan on December 21, 2009. (*Id.* Tab 54 at p. 961). The Sixth Amended Plan contained the following terms:

> **ARTICLE I. DEFINITIONS**
> **1.46 ProSat Settlement Agreement:** Shall mean the Professional Satellite and Communications and Jonathan Mitchell Shiff Settlement Agreement. This agreement is made as a full and final settlement of all outstanding claims and actions. . . .
> 
> . . .
> 
> **ARTICLE VI. MEANS FOR IMPLEMENTATION**
> . . .
> **6.4.3 Prosat Settlement:** ProSat initially filed a proof of claim in Debtor's estate for $30,800,401.00. The Debtor also filed four claims in the ProSat bankruptcy for approximately $27,265,000, representing Debtor's proportionate share of ProSat's litigation actions against DIRECTV and

6

Nayna, and indemnification on various claims asserted against the Debtor due to his membership in ProSat. The parties agreed to settle their disputes and offsetting claims pursuant to the ProSat Settlement Agreement. This agreement provides for the reduction in ProSat's Claim and the establishment of a Liquidating Trust to litigate claims against DIRECTV.
. . .

**6.4.11 Imagitas Litigation:** Imagitas, Inc. ("Imagitas") filed a complaint against ProSat for damages based upon breach of contract and services rendered on ProSat's behalf. . . . Imagitas later added all former members of ProSat, including the Debtor, as co-defendants. The Court entered a judgment for joint and several liability against all defendants. . . . Imagitas filed a proof of claim [in] the Debtor's bankruptcy for $2,298,094.00. ("Imagitas Claim") [Claim No. 50]. . . . [A]s part of the Ruette Monte Carlo Stipulation, Imagitas agreed to specific treatment that will resolve the allowance and amount of [Claim No. 50].

    Imagitas also has a corresponding claim for the same amount as the Imagitas Claim in the ProSat bankruptcy [Claim No. 41]. Pursuant to the ProSat Settlement Agreement, to the extent that the Reorganized Debtor makes any payment on the Imagitas Claim [Claim No. 50], such payment will result in a credit against the allowed amount of the corresponding Imagitas claim in the ProSat bankruptcy [Claim No. 41]. The Reorganized Debtor will then subrogate to the part of the Imagitas claim in the ProSat bankruptcy [Claim No. 41] so credited and a general unsecured claim without priority by the Reorganized Debtor's estate shall be deemed allowed in the amount of such credit resulting from the reduction of the allowed amount of the Imagitas claim in the ProSat bankruptcy [Claim No. 41].
. . .

**6.10 Disposition of Ruette Monte Carlo:** The Debtor has entered into the Ruette Monte Carlo Stipulation with Union Bank and Imagitas. . . . The Stipulations contained the following terms:
. . .
Union Bank/Imagitas shall have the exclusive right to direct and control the marketing, sale or leasing of the premises for a period of eighteen (18) months following the Effective Date. Such right of direction and control shall include, but not be limited to the right to select a broker, establishment of a listing price and any subsequent adjustments of same, receipt of offers, negotiation of sale price and acceptance or rejection of any offer which at a minimum will pay in full or otherwise satisfy the liens of Class 1(c) claimant CitiMortgage and Class 1(d) claimant Tatiana Takaeva Shiff (the "Minimum Sales Price").
. . .

> Imagitas will be treated as fully secured on the Ruette Monte Carlo Property and the proceeds of any sale of the premises will fully satisfy all claims against the Debtor's estate. . . .
>
> . . .
>
> The Ruette Monte Carlo Stipulation shall also act as an assignment of the Imagitas claim as against the estate of ProSat to the Debtor. . . .

(*Id.* Tab 54).

Subsequent to the Plan's Confirmation, Imagitas and Union Bank marketed the Ruette Monte Carlo property. The parties were not able to sell the property for an amount that satisfied all the secured claims on the property. Instead, on October 21, 2011, Shiff, as the Reorganized Debtor, filed an Amended Motion of Reorganized Debtor to Sell Real Property Free and Clear of Liens, seeking authorization to sell the Ruette Monte Carlo property at a short sale for $6,600,000.00. (*Id.* at p. 285 & p. 424). Judge Taylor approved the Motion on December 2, 2011. (*Id.* at p. 309). The property sold on December 22, 2011. (*Id.* at p. 72). Imagitas did not receive any payment on Claim No. 50. (*Id.* at pp. 72, 476).

Years later, on October 20, 2016, Wolf, as Trustee of the Prosat Estate, objected to Claim No. 41 in the Prosat case. (*Id.* Tab 7). On January 9, 2017, Judge Adler entered her Order Disallowing Claim of Jonathan Shiff (Claim No. 41). She held that the Release precluded the Shiff Estate from recovering on Claim No. 41. Judge Adler found that the "spirit" of the Settlement Agreement and "its intended purpose was to resolve all claims of these parties against each other related to the Imagitas [J]udgment unless actual payment was made by Shiff to Imagitas." To Judge Adler, "the Shiff [E]state's attempt to back door a claim against ProSat by subsequently acquiring from Imagitas its proof of claim #41 against ProSat . . . is, in the Court's view, a violation of the spirit of the" Settlement Agreement. Her Order disallowed Claim No. 41 in its entirety and reduced the value of Claim No. 41 to $0. This appeal and cross-appeal followed.

/ / /

/ / /

## LEGAL STANDARD

The district court has jurisdiction to hear this bankruptcy appeal pursuant to 28 U.S.C. § 158(a)(1). The Bankruptcy Court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed de novo. *In re JTS Corp.*, 617 F.3d 1102, 1109 (9th Cir. 2010); *In re Tamen*, 22 F.3d 199, 203 (9th Cir. 1994) ("Where the interpretation of a contract involves review of extrinsic evidence, this court reviews findings of fact for clear error while reviewing *de novo* the principles of law applied to those facts.").

## DISCUSSION

The Shiff Estate presents two issues for review. It argues that the Bankruptcy Court erred when it held that Claim No. 41 was barred by the Release in the Settlement Agreement. It also contends that the Bankruptcy Court erred in reducing the value of Claim No. 41 to zero. Wolf, as Cross-Appellant, presents an additional two issues for review. Because the Court affirms the Bankruptcy Court's disallowance of Claim No. 41, it does not address Wolf's cross-appeal.

**I.   The Release Precludes the Shiff Estate from Asserting Claim No. 41 as an Assignee**

The Shiff Estate argues that the Release in the Settlement Agreement does not prevent it from seeking payment on a third party claim that it was assigned subsequent to the negotiation of the Release. It contends that because it stands in Imagitas's shoes with respect to Claim No. 41, the Release does not apply. Wolf counters that the Shiff Estate's broad Release of the Prosat Estate encompassed the later-acquired Claim No. 41.

The Shiff Estate is correct that an assignee generally stands in the shoes of the assignor. Under California law, a "judgment creditor may assign the right represented by the judgment to a third person. In doing so, the judgment creditor assigns the debt upon which the judgment is based. Through such an assignment, the assignee ordinarily acquires all rights and remedies possessed by the assignor for the enforcement of the debt, subject, however, to the defenses that the judgment debtor had against the

///

9

assignor." *Cal-Western Bus. Servs., Inc. v. Corning Capital Grp.*, 221 Cal. App. 4th 304 (2d Dist. 2013).

These general principles of contract law are subject, though, to bankruptcy law. When a claim is made against a debtor, a party in interest may object to the claim. 11 U.S.C. § 502(a). The Bankruptcy Code provides that "if such objection to a claim is made, the court . . . shall allow such claim in such amount, *except to the extent that such claim is unenforceable against the debtor and property of the debtor, under any agreement* or applicable law for reason other than because such claim is contingent or unmatured." *Id.* § 502(b)(1) (emphasis added). The plain statutory text places no limit on who is asserting the claim, who negotiated the agreement, or the contents of the agreement. Rather, the text provides that "any agreement" can render the claim "unenforceable against the debtor and property of the debtor." *Id.*

The question is whether the Release in the Settlement Agreement renders Claim No. 41 asserted by the Shiff Estate[3] unenforceable. It does. The Release is broad. Shiff and his Estate "release[d] . . . and forever discharge[d] the ProSat Bankruptcy Estate . . . from any and all claims . . . of any character, nature and kind whatsoever, known or unknown, suspected or unsuspected, arising out of, resulting from, related to, or in connection with the Shiff Bankruptcy Case [and] the ProSat Chapter 7 case." (ROA at pp. 163-64). The Release "cover[ed] all claims or possible claims of every nature and kind whatsoever, whether known or unknown, suspected, or unsuspected, or hereafter discovered or ascertained." (*Id.* at p. 165).

---

[3] The parties dispute whether Shiff, individually, or the Shiff Estate owns Claim No. 41. The Court need not decide this question because the scope of the Release includes both Shiff as an individual and his Estate. The Court refers to the Shiff Estate as the party asserting Claim No. 41 for purposes of consistency only. The Court is not making a finding that the Shiff Estate owns Claim No. 41.

10

The California Supreme Court has explained that "a release of 'all claims' covers claims that are not expressly enumerated in the release." *Jefferson v. Cal. Dep't of Youth Auth.*, 28 Cal. 4th 299, 305 (2002) (internal citations omitted). "Extrinsic evidence might establish that a release refers only to all claims of a particular type," *id.*, but there is no evidence that was the parties' intent at the time they negotiated the Release. Absent such evidence, "[t]he law imputes to a person an intention corresponding to the reasonable meaning of his words and acts." *Id.* (internal citations and quotation marks omitted).

In this case, the reasonable, plain meaning of the Release includes Claim No. 41. The Shiff Estate agreed to release "any and all claims" without limitation, including unknown, future claims of any "character, nature and kind." The Shiff Estate expressly waived the protections of California Civil Code Section 1542, which provides that a "general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor." Cal. Civ. Code § 1542. The California Supreme Court has held that an express waiver of all rights under section 1542 "unambiguously" "establishes . . . the parties' intent that the release cover possible . . . claims." *Jefferson*, 28 Cal. 4th at 307.

Moreover, when Shiff agreed to the Release, he was aware of Imagitas's Claim No. 41. He later acquired that claim through an assignment, knowing that he had signed a comprehensive release barring him from asserting any and all claims against the ProSat Estate except for a possible claim if the Shiff Estate made a payment on Claim No. 50. Neither the Shiff Estate nor Shiff individually ever made a payment on Claim No. 50. The fact that the sale of Ruette Monte Carlo "satisfied" Claim No. 50 is not the equivalent of payment on the claim by the Shiff Estate. (ROA at p. 1068 (in the Stipulation, Imagitas agreed to accept the proceeds of any sale as full satisfaction of its claim); ROA Tab 54 (incorporating the provisions of the Stipulation into the Confirmed Plan)).

/ / /

11

3:17-cv-00033-BEN-BLM
3:17-cv-00080-BEN-BLM

In a similar situation, last year, the Ninth Circuit considered whether a third-party assignee who acquires a claim from an insider becomes an insider through the assignment and thus is foreclosed from voting the claim. *In re Village at Lakeridge, LLC*, 814 F.3d 993, 999-1000 (9th Cir. 2016). The court held that a third-party assignee does *not* become an insider as a matter of law by acquiring the claim. Instead, "a person's insider status is a question of fact that must be determined after the claim transfer occurs." *Id.* at 1000. The court explained that because "insider status is not a property of a claim, general assignment law—in which an assignee takes a claim subject to any benefits and defects of the claim—does not apply." *Id.*

Although *In re Village* concerns another aspect of bankruptcy law, similar principles apply here. While a claim may be allowable in the hands of the original claimant, defenses to the status of the current claimant may prohibit that claimant from asserting the claim. The Shiff Estate agreed to a comprehensive release in the Settlement Agreement. That the Shiff Estate now owns Claim No. 41 as an assignee does not mean it can escape the Release. The Release applies to the Shiff Estate, the current claimant, which renders Claim No. 41 unenforceable against the ProSat Estate.

The Bankruptcy Court did not err in holding that Claim No. 41 was barred by the Release in the Settlement Agreement.

## II. The Bankruptcy Court Did Not Err in Reducing the Value of Claim No. 41 to Zero

At the end of its Order Disallowing Claim of Jonathan Shiff, the Bankruptcy Court stated that "the Claim of Jonathan Shiff (Claims Docket No. 41) is hereby reduced to $0.00 and disallowed in its entirety." The Shiff Estate contends that even if Claim No. 41 is disallowed, the Bankruptcy Court should have found that the disallowed claim retains its original value of $2,121,411.53 and may be enforced by anyone other than the parties to the Settlement Agreement. It argues that by valuing the claim at zero, the Shiff Estate cannot sell, assign, or transfer the claim for value. The Shiff Estate acknowledges that

///

"there is no case law directly addressing the effect of a determination of disallowance on the value of an assigned third-party claim." (Appellant's Opening Br. at 24).

The Bankruptcy Court concluded that Claim No. 41, as asserted by the Shiff Estate, is disallowed because it is barred by the Release. Claim No. 41 is thus unenforceable against the ProSat Estate and has no value in the hands of its current holder. The Bankruptcy Court's Order does not state otherwise. It specifically said that "the Claim of Jonathan Shiff . . . is hereby reduced to $0.00." The Bankruptcy Court did not state what the value of the claim may be in another claimant's hands. The Bankruptcy Court correctly valued the Shiff Estate's Claim No. 41 to be $0.00.

## CONCLUSION

The order of the Bankruptcy Court is **AFFIRMED.**

**IT IS SO ORDERED.**

Dated: September 27, 2017

_____
Hon. Roger T. Benitez
United States District Judge